Our first case for today is 21-2081, Groves v. McDonough. Is it Ms. Lorgis? How do I say her name? Lorgis. Ms. Lorgis, please proceed. And you may take your mask off of the podium if you wish. Thank you, Chief Judge Moore, and may it please the Court. Caroline Lorgis, on behalf of appointed amicus curiae. This Court should recognize automatic stays upon a veteran's request in order to uphold the important underlying principles of the veteran's claim system. Indefinitely? Your Honor, the Secretary's concerns of an indefinite stay are overblown. Veterans have every... Well, here we are. This has been going on for 10, 20 years. Yes, the Secretary characterizes Mr. Groves' requests for a stay as indefinite or seeking to stay the case for 15 years. But that's simply not the case. Mr. Groves has been litigating this case for years in an effort to have his requests for a stay acknowledged and respected by the Board. But what did he say? You characterized him as saying that he requested a stay in order to fully develop and correct the factual record. I don't see any support for that. And I also looked in the record before us, and I don't see his request that we have copies of them. If I'm mistaken in that, please correct me. But what did he say when he requested these stays? Yes, Your Honor, he requested that... Have you looked at his requests? Based on the Board's decision, yes, and how the Board... You haven't looked at the actual request, just the Board decision? I do not have a copy of the actual letter. However, the letters were characterized by both the Board and the Veterans Court on which we are relying. Where could we find how the Board characterized his request? Where would you point me to for that? Because like Judge Dyke, I was struggling to find where he explained his rationale for wanting to enjoin further action. And you make several representations in your brief about what his rationale was, and I'm also, like Judge Dyke, struggling to find where in the record that is the case. So where in the Board's opinion did you say? Understood, Your Honor. In the Board's decision, they characterized his letters as simply not... What page? I can provide a citation on the bottom. There's a reference on Appendix 3 in the middle of the page. This is the Veterans Court opinion. He said he enjoined, this is the middle of the page, he enjoined the R.I. on the Board from further action regarding the VRE claims due to destruction of records and repeated constitutional and due process violations. But I don't see any reference in the Veterans Court opinion or the Board's opinion that he requested a stay so that he could develop further evidence, which you say in your brief. What's the support for that? Your Honor, that's based on correspondence with Mr. Groves as well as his supplemental... Where? I mean, what's your record of support for it? The supplemental briefing in this case, he does specify on page 9 that correction of illegal records is one of the main basis for his request for a stay. On page 9? Of the supplemental informal brief. Where? Is it top of the page, bottom of the page? I'm on page 9 of, I think I'm on page 9 of his supplemental. He states in the middle of the page, this failure to correct the illegal records is one of the main basis upon which Mr. Groves invoked his right to stay the proceeding because without a fair developed record, there can be no fair adjudication. What does he mean by illegal records? Mr. Groves disputes the accuracy of the records in this case. For example, based on my review of the record, the board in its 2017 decision called into question his ability to travel, which is one of the basis on which his VRE benefits were denied. In the 1999 Texas Veterans Commission report, they noted that the veteran was stranded at his residence. So providing additional evidence along these lines may help further bolster his claim. Did he request a hearing before the board in the most recent round? As I understand the board regulations, you don't get a hearing unless you request it. Did he request a hearing? Your Honor, the secretary may be able to speak better to the specific facts of that. I think you know, in performing the role of amicus, it requires that you familiarize yourself with the record, including the record before the board, so that you can help us answer these questions. Understood, Your Honor. The fear of indefinite stays is overblown because the veterans have an incentive to continue their claims to resolution. The veterans have every incentive to get their benefits because they are relying... But if that were true in this case, my understanding of why the VRE benefits were denied is because of Mr. Grove's failure to participate in the evaluation. Is that right? Yes, Your Honor. The VRE benefits were denied because he was unable to travel to the location of the RO in order to have his VRE evaluation. But didn't they then move the location to make it more convenient for him and offer him multiple additional opportunities that were closer to home to be evaluated? Yes, Your Honor. I believe that those locations were still 250 miles away from his home, which is, if the Veterans Commission report is correct that he was stranded at his home, still a very difficult burden to do so. The final March 2016 decision appointment that this case stems from was not closer to his home and was not providing him with funds in order to travel to or from the location. And did he make this argument that the location though closer to my home is still not possible for me to get to? Yes, Your Honor. He articulated that multiple times throughout his meetings and he also articulated the fact that he felt abandoned by the VA because they were unable to come up with an accommodation for him. Is it your view that in order... when he's seeking benefits for vocational rehabilitation and employment services that if he... I guess what is it that you view the VA as being required to do in this case? Do you believe that they absolutely have an obligation to come to his home if he says he can't travel there? The VA has the obligation to provide reasonable accommodations and to take into account the circumstances of the veteran himself. So in this case, providing some sort of home evaluation, there was one home evaluation representative was sent. However, Mr. Groves was not given notice ahead of time and did not have a productive evaluation at that time. But is this issue about the denial of the benefits before us or is the only issue before us whether they should have abstained the decision? The Veterans Court... improperly participated in de novo finding of fact when they found that the board... that there was no prejudice in the board not applying. Well, but they're allowed to make fact findings in the context of their harmless error jurisdiction. They have expressed statutory jurisdiction to make harmless error assessments, which requires them to make de novo fact findings. And that's all within their jurisdiction as afforded to them by Congress by statute. So what's wrong with them having done that? Under Tadlock v. McDonoghue, the court should not have found factually that Mr. Groves did not provide a reason for his stay when the underlying board decision simply held that the letters did not constitute a withdrawal of his appeal. Why? When you assess harmless error, you may very well have to address facts that exceed the scope of the board's review on an actual case because you're now assessing harmless error, which is a different issue necessarily than exactly what was presented to the board. And VA has been given constant... Congress gave them express jurisdiction over harmless error analyses in the first instance, de novo. So why? What is wrong with them deciding whether he was prejudiced or not? What is wrong with them making a decision about whether he could or couldn't travel or whatever? Whatever it is that they did from a factual standpoint, why is that erroneous in your view? The veterans court in this case applied too high of a standard, particularly when there was no standard for Mr. Groves to meet at the time when he requested his stay. He did expressly what Hamilton requested, which was identifying the claims in writing that he wished to stay, and he even quoted the Hamilton language in his letters. At the time, there was no standard for him to... that he was required to meet. But again, we don't have the letters, so we don't know exactly what he said. Yes, this is based on the veterans court's findings of fact, Your Honor. Where in the veterans court's finding of fact are you pointing? Direct me to what you want me to look at. If you look at the respondent's informal brief and appendix in this case. Respondent, so the government's brief? Yes, that's correct. Okay. The government's brief at where? The supplemental brief or the original brief? The original brief. Okay. Original government brief. Yes. They describe at APPX 03-04, at the bottom, the letters. And the veterans court noted... Yes, but again, that doesn't tell us what he said in joining the agency from any further adjudication of his claims. But why? What was his theory? At the time, there was no standard that Mr. Groves was required to meet, and that's why the court in this case should hold a clear standard regardless of the test, because both the veterans court and the board and veterans need that guidance. The simple fact alone that Mr. Groves had a 2012 decision from the veterans court that came to a contradictory result shows the need for guidance. Your Honor, I would like to reserve my further time in rebuttal. Of course. No problem. Thank you. Let's hear from the government. Mr. Pixley, please proceed. Thank you. May it please the court. I will start off by answering the questions that the court posed for supplemental briefing and argument. Well, I'd like you to start. I think that the standard that the CABC was applying to whether or not a stay should be granted is incorrect. To the extent that they read Hamilton as requiring and potentially indefinite stay, I think that would be inconsistent with the law in sort of every analogous area I can imagine, not to mention the fact that we're not even bound by Hamilton, so it's kind of irrelevant now that we're here. Why don't you start by telling me what the standard should be for what the board ought to be thinking about when it's assessing a request for a stay. Yes, ma'am. Our position, we agree. We believe that Chief Judge Bartley, in her concurring opinion, interpreted Hamilton correctly and stated that a veteran, when a veteran requests a stay, there is no automatic right to a stay. The appropriate standard is that the board has inherent authority to manage its docket under 38 U.S.C. Section 7107, and this includes issuing stays. This was the holding of the Veterans Court in the Ramsey decision that we cited in our supplemental brief. That authority to issue stays is not unlimited, and that was stated in Ramsey, in addition to another Veterans Court case called Roboto. Do you believe the board, for example, could choose to issue an indefinite stay? Do you believe that's within the scope of their inherent authority? The board's inherent authority to issue an indefinite stay, is that the question? Yes. Do you believe the board has the inherent authority to issue an indefinite stay? That would... A stay decision would be fact-specific. I asked a legal question, not a factual question. Theoretically, I would answer yes. That decision would be reviewable by the Veterans Court. Who, just out of curiosity, would bring that challenge to the Veterans Court? If the board issued an indefinite stay, how would that ever be reviewed? That would be reviewed by the Veterans Court under 38 U.S.C. 17... No, who would bring the challenge? If the veteran asked for an indefinite stay and the board granted it, do you think the veteran is going to challenge that to the Veterans Court? No. If the board issued an indefinite stay, which the veteran had requested, is the government going to come in and contradict the board and somehow bring an appeal? And if so, what would the jurisdictional basis be for the government to do so? How exactly is the Veterans Court going to review this indefinite stay? Well, I admit that example that the court is asking, that hypothetical, I can't imagine a situation where the board would have a reason to issue an indefinite stay because the board also has an obligation, VA has an obligation, to adjudicate these claims in a timely fashion. So to put them on hold forever might come up against its statutory obligation to resolve veterans' claims. So is there a possible reason, indefinite? Yeah, I would have trouble thinking of that circumstance or who might appeal that. But in any event, in answer to the court's question, again, the Ramsey decision, Roboto has said, that the VA's authority to issue stays is not unlimited and it is reviewable by the Veterans Court under an abuse of discretion standard. Okay, but what's going on here? What did he say in his request? Are you familiar with it? Have you looked at it? Yes, so... What did he say? Yes, Mr. Groves, in October 17, 2016, wrote a letter to the board and he said, And this record is not in the record before us, right? The actual letter is not in the record, but the language of his request is cited in the decision. He enjoins you from any further adjudication of his claims, period. That was the only reason given. Okay. He didn't ask for more time because he... His request didn't explain in order to further develop the record or... I mean, I assume that his request is actually in the record, it just isn't provided to us. Is that correct? Yes, that's correct. Through the record before the board, but not in the... That is correct. It was a broad-based request to enjoin you from any further adjudication of the claim, and he cited Hamilton. That was it. A reason was not given that he needed more time to get evidence or he was having health problems or medical problems. It was simply a blank request for a stay of an indefinite duration. Okay, that's the first one. There are two, right? When he used this, I want to enjoin you language. In the second one, did he provide any explanation? Am I right in understanding the facts that on two separate occasions he reiterated this request to enjoin further action or further processing? Yes. As the board noted and as the Veterans Court noted, over a period of time he issued... made multiple requests. The most recent in time, that's at issue, and the board's July 2017 decision, he did not give a reason. He simply cited Hamilton. And is that true for all of his requests I'm asking you? You're saying he made multiple requests. I was aware of at least two. Maybe there are even more than two. I don't know. We weren't provided that portion of the record. Have you reviewed all of them? Do any of them ask or give any specificity at all? I reviewed the most recent one. That's at issue here. When you say the most recent one that's at issue here, he explains that he on multiple occasions made this request, all of which appear to have been disregarded. So aren't they all on issue here? My understanding is that this veteran simply asked for, in his words, enjoining from any further adjudication. And what's at issue here is a VRE claim that was put in discontinued status because he failed to cooperate. He failed to attend his first counseling meeting. VRE is a counseling process where a veteran meets with a counselor. The veteran develops vocational, educational goals. The process works with the cooperation of the veteran. Okay, but as I understand what he's saying, to the extent that I can understand it, he seems to be saying that the records on which the RO relied were, quote, illegal. That is, apparently he contends that they're inaccurate, right? Yes. He has various claims that there's been spoliation, and he's claiming that there was, in his words, illegal litigation. It's less than clear to us what his arguments are or what he's seeking. Did he request a hearing before the board in this case? No. Not to our knowledge. He did not request a hearing before the board. So requesting, if he thought the records were inaccurate, requesting a hearing before the board would have, if he'd gotten the hearing, which he would have, would have given him the opportunity to show that the records were inaccurate, right? That is correct. And actually, we cite some of these regulations in our supplemental brief. There are processes and rules whereby, for example, if a veteran needs more time to perfect a claim, to request a hearing, to gather evidence, to get representation, a veteran can ask for more time, an extension. And this is under a good cause standard. So a stay, which is a complete cessation of adjudication, is not the only available tool for a veteran. A veteran can make a request. If they need more time, if they're having health problems, there are existing rules which allow for that. And I think that you said . . . What happens in this case where, if I understand Mr. Groves' argument, it is that he was not unwilling to cooperate. It's that he couldn't cooperate because the appointments were 250 plus miles from his home and he had no means of getting there. Just out of curiosity, I understand that's not exactly the issue in front of this court today. But what does the VA do generally in situations like this when you have potentially a veteran who isn't capable of traveling and you tell him he has to, in order to get these benefits, come to a consultation 250 miles away? What would normally happen? How does it normally operate? My understanding, which may be somewhat limited, is that the decision, for example, to put him in discontinued status was not actually made by the board. It was made by the regional office. And as I understand the VRE process, in answer to your question, I think they try to work with the veteran. I would imagine they would try to arrange transportation because many veterans have mobility problems. My understanding is that the VA tries to go out of its way to assist the veteran in this process. I have what's probably a very dumb question. He is seeking vocational rehabilitation and employment benefits. What are those? I thought they were training. They were helping him ready himself for an employment situation, not just money. This isn't like a TDIU situation where we're deciding whether you're employable and we're deciding you're not, and therefore we're going to give you money as a result. These are benefits to help prepare a veteran to engage in productive employment. Is that right? Yes. That's my understanding, is that the veteran meets with the counselor. They set goals. So it could be a vocational goal to get training, for example, to obtain some type of gainful employment. Part of the VRE program can include payment for that type of training. It can be educational goals. So it's working with a counselor to set goals, and it's a cooperative process where the veteran works with a guidance counselor. It seems inherently unreasonable to imagine that any veteran would be expected to travel 250 miles to meet with this counselor you're describing. It wouldn't be a one-time meeting. It would be sort of a continuing dialogue about how to support the veteran, and it just seems inherently unreasonable to suggest 250 miles one way, even if this veteran is in perfect health, to expect them, in order to be able to avail themselves of these benefits, to travel 250 miles each way, one way there and one way back, to have this meeting with a counselor. That just seems really bad. Well, I'm not sure that's the board in its decision, and as the Veterans Court relayed these facts, as they explained it, over a 20-year period, this was discontinued because Mr. Groves failed to cooperate. The record is not established that he's trying. It's too far to drive. He couldn't do it for that reason. The record is that he's not cooperating with this process. He's got some kind of other agenda, and this was ongoing for an extensive period of time. Okay, I've kind of taken you off case. Let me bring you back for a second and ask you. Suppose that I were to agree with you that the standard the board applied, or the court applied, and the way in which they're reading their own Hamilton decision isn't appropriate, and that the standard that the government is advocating for, in which the board has discretion, is in fact the correct standard, inherent authority and discretion. Does that mean I have to vacate and remand this case, or does that mean, in your view, I would affirm this case, because despite the fact that the standard was wrong, the CAVC ultimately concluded there was harmless error nonetheless. So what is your view if I agree with you that there is a problem with the legal standard that was being applied at the board level? What is the consequence to this case? I believe that the court's question as to the appropriate legal standard. Does Hamilton set forth an automatic stay requirement or not, or is the concurrence correct? I believe that's a pure question of law, and I believe that this court can decide that. Right, but do we have to remand to have the Veterans Court apply the new and correct standard, or can we simply affirm on the ground that Mr. Groves has failed to show harmful error from the denial of a stay because he never made an effort to present additional evidence or indicated that he had additional evidence to present? Yeah, that's a good question that we have thought about. A remand typically or often is to address some factual situation. I don't think we really have that to set forth a legal standard. If the court can decide this without remand and setting forth what the correct standard is, we think it's the concurring opinion. Yes, but we set forth the correct standard. It's not our job to then apply it to the facts of the case in the first instance, right? We have extremely narrow jurisdiction, especially in veterans' cases. So if the correct standard is the board has discretion, inherent authority, you would like me to exercise that for them in the first instance on appeal? Yes, ma'am. Yes, ma'am. I think that would be appropriate to remand setting forth the correct standard in answer to your question. And so you don't think then that the harmless error determination by the Veterans Court sort of supersedes a need to remand? Well, we think the result is correct, and that's why it was a concurring opinion. Judge Bartley thought the result was correct. There is no harmless error. Even now, there is no harmless error. When you say there is no harmless error, you realize what you're saying is by two negatives, no harmless error. You're saying that there is, in fact, harmful error. Yeah. My point is this is a VRE claim, and actually it's in discontinued status. Mr. Groves can actually come back and reapply for the VRE benefit. This may entail that he demonstrate to VA that he's going to be cooperative. It may require approval of a psychologist. But ultimately, it's in discontinued status. He can apply to get it into. Okay, but the question is can we affirm in this case if we find that the standard was wrong and that the standard should be abusive discretion and multi-factor test, can we nonetheless affirm on the ground that Mr. Groves, according to the Veterans Court, didn't show harmful error? Or do we have to remand to have the Veterans Court and the board consider this case under the correct standard? Yes. If the court finds that the panel decision wrongly decided the Hamilton standard and if the court agrees, let's say, with the government that it was the concurring opinion, a remand with that direction would be appropriate. Okay. Anything further? No. No, definitely not. All right, let's move on. So there's the court's questions. Thank you. Ms. Lourdes, do you have any more time? Thank you, Your Honor. We agree with the government that a remand is appropriate in this case. We would need to vacate and remand because there can be no harmless error when he did not know the standard that he needed to meet. So Mr. Groves applied Hamilton. He quoted the exact... I don't understand how that can be the case. The lower tribunal found, the CAVC found, that the board was required to grant him the stay, and then they found nonetheless, despite that requirement, which wasn't met, there was harmless error. If we come along and say the board wasn't actually even required to grant it, what we've actually done is made the standard more difficult for the veteran, not less difficult. So how is there harmless error? I mean, how is there prejudicial error at that point in time when what we've actually done is change the standard in a way that is to the detriment of the veteran? How in the world, if he didn't satisfy the prejudicial error standard when the standard was higher, can he meet it when the standard for him is now less advantageous? Yes, Your Honor. And that the changing standard or changing the goalpost, which he thought he needed to meet. So he had a 2012 decision that the Veterans Court recognized his requests to stay and said that without further authorization, any decision would be void ab initio, and they said that the appeal must be dismissed because of that. So here he is making two similar requests based on the standard in Hamilton, and he should be provided the opportunity to meet whatever standard is articulated by this court. Okay, but if we're changing the standard in Hamilton with respect to what you need to show to get a stay, we are not changing the standard for harmless error. It's always been clear that the burden to show prejudicial error would be here on the veteran, correct? Right? Yes. Okay, and so far as I can tell, he didn't make any showing that the error was prejudicial. Because at the time there was no such standard that required him to do so. No, there was. Hamilton didn't change the fact that it's a harmless error standard. That's right. Hamilton just articulated a standard for a stay, which was incorrect. But whether his argument is that he should have gotten a stay under Hamilton or he should have gotten a stay under the new standard that we might articulate in this case, in any event, he has to show that there's harmful error from the denial of a stay. And I don't see that he ever made any effort to show harmful error. That's the problem. And that's what the Veterans Court said. He didn't show harmful error. So that's not a change in the stay standard. It would be applying the existing harmless error standard, which existed before Hamilton, during Hamilton, and after Hamilton. And the court is required to give pro se plaintiffs a sympathetic reading of their appeals. So in this case, a sympathetic reading would be understanding that he attempted to articulate the standard of a stay, that he did not understand the requirements for that, and that what was needed to show harmless error or harmful error. Therefore, it would be prudent to remand this case and to give him the opportunity to articulate that new standard. Your Honor, I see that my time is up. Are there any further questions? Your Honor, counsel, this case is taken under submission. I just want to say, it's not very often that we request argument in a case that is uncounseled, a submitted case. And you could see by the nature of the many questions today that this case was difficult and challenging, which is why we asked for argument. I just wish you'd both come a bit more prepared for it. Thank you.